UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| LYNNE D., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br><br> Case No. 2:22-cv-00511 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Lynne D.[1] filed this action for judicial review[2] of the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her application for disability insurance benefits under Title II of the Social Security Act.[3]  The Administrative Law Judge ("ALJ") denied Ms. D.'s application, finding she did not qualify as disabled.[4]  Ms. D. argues the ALJ erred by (1) failing to properly evaluate the medical opinion evidence; and (2) failing to consider her exemplary work history in evaluating her credibility.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by her first name and last initial only.

[2] (*See* Compl., Doc. No. 6.)

[3] 42 U.S.C. §§ 401–434.

[4] (Certified Tr. of Admin. R. ("Tr.") 22–39, Doc. No. 19.)

[5] (*See* Opening Br., Doc. No. 22.)

The court[6] has carefully reviewed the record and the parties' briefs.[7]  Because the ALJ applied the correct legal standards and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner.  This court reviews the ALJ's decision and the whole record to decide whether (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings.[8]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal."[9]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[10]  Although the sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[11]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12]  "The possibility of drawing two

---

[6] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 17.)

[7] The appeal is determined on the written memoranda, as oral argument is unnecessary.  *See* DUCivR 7-1(g).

[8] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[11] *Id.* at 1154 (internal quotation marks omitted).

[12] *Id.* (internal quotation marks omitted).

inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[13]   The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[14]

**APPLICABLE LAW**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."[15]   Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[16]

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ uses a five-step sequential evaluation.  The analysis requires the ALJ to consider whether:

1) The claimant is engaged in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments which precludes substantial gainful activity, listed in the appendix of the relevant disability regulation;

---

[13] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[14] *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[15] 42 U.S.C. § 423(d)(1)(A).

[16] *Id.* § 423(d)(2)(A).

3

4)   The claimant has a residual functional capacity to perform past relevant work; and

5)   The claimant has a residual functional capacity to perform other work in the national
economy considering the claimant's age, education, and work experience.[17]

The claimant has the burden, in the first four steps, of establishing the disability.[18]  At step five,
the burden shifts to the Commissioner to show the claimant retains the ability to perform other
work existing in the national economy.[19]

## PROCEDURAL HISTORY

On June 29, 2018, Ms. D. applied for disability insurance benefits under Title II, alleging
disability beginning on February 23, 2018.[20]  After an administrative hearing,[21] the ALJ issued a
decision on June 16, 2021, finding Ms. D. was not disabled and denying her claim.[22]

At step two, the ALJ found Ms. D. had severe impairments of "chronic back arthritis;
asthma; obesity; frontotemporal dementia; an affective disorder (variably called major depressive
disorder or bipolar disorder); an anxiety disorder (variably called generalized anxiety disorder or
anxiety); dependent personality disorder; and attention deficit hyperactivity disorder."[23]  The
ALJ also found Ms. D. had the nonsevere impairments of "contusion, heavy underlying

---

[17] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[18] *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[19] *See id.*

[20] (*See* Tr. 22.)

[21] (*See id.* at 47–85.)

[22] (*Id.* at 22–39.)

[23] (*Id.* at 24.)

psychiatric disease, maxillary sinusitis, hypertension, chronic gastroesophageal reflux disease ('GERD'), right-sided rib fracture, metabolic syndrome, mild obstructive sleep apnea, anxiolytic dependence, pharyngitis, deep vein thrombosis of axillary vein, closed head injury, acute kidney injury, benign essential tremor, wound infection, acute respiratory failure, and insomnia."[24]  At step three, the ALJ found Ms. D.'s impairments did not meet or medically equal an impairment listing.[25]  At step four, the ALJ found Ms. D. had the residual functional capacity ("RFC") to perform "medium work" with the following limitations:

> [T]he claimant can occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds.  She can stand and/or walk 6 hours and sit 6 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, and she can frequently stoop, crouch, crawl, or climb ramps and stairs.  She can tolerate no more than frequent exposure to pulmonary irritants, and she can have no exposure to hazards, including unprotected heights or operating heavy machinery.  Mentally, she is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in up to 30 days' time.  She can sustain only ordinary routines and make no more than simple, work-related decisions.  She cannot perform any fast-paced production work.[26]

Based on this RFC, the ALJ found Ms. D. unable to perform any past relevant work.[27]  But at step five, the ALJ found Ms. D. capable of performing other jobs existing in significant numbers in the national economy.[28]  Therefore, the ALJ found Ms. D. was not disabled.[29]

---

[24] (*Id.* at 24–25.)

[25] (*Id.* at 25.)

[26] (*Id.* at 28.)

[27] (*Id.* at 37.)

[28] (*Id.* at 37–38.)

[29] (*Id.* at 38.)

The Appeals Council denied Ms. D.'s request for review,[30] making the ALJ's decision final for purposes of judicial review.

## ANALYSIS

Ms. D. raises two claims of error. First, she argues the ALJ failed to properly evaluate the medical opinion evidence.[31] Second, she argues the ALJ's evaluation of her "credibility" was undermined by the improper evaluation of medical opinion evidence and by the ALJ's failure to consider Ms. D.'s exemplary work history.[32] As explained below, both arguments fail.

### A. Medical Opinion Evidence

Ms. D. argues the ALJ failed to properly evaluate medical opinion evidence from her treating psychiatrists, counselor, neurologist, and an independent neurological evaluator.

The Social Security Administration implemented new regulations for evaluating medical evidence for cases filed on or after March 27, 2017, like Ms. D.'s.[33] Under the prior regulations, medical opinions of treating providers were generally given more weight than non-treating sources.[34] But under the new regulations, the ALJ does not "defer or give any specific

---

[30] (*Id.* at 11–13.)

[31] (*See* Opening Br. 4–20, Doc. No. 22.)

[32] (*See id.* at 20–21.)

[33] *See* Revisions to Rules Regarding the Evaluation of Med. Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132 (Mar. 27, 2017)); 20 C.F.R. § 404.1520c.

[34] *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, [the ALJ] give[s] more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s).").

evidentiary weight, including controlling weight," to any medical opinions.[35]  Instead, the ALJ

assesses the persuasiveness of all medical opinions and prior administrative medical findings

based on: (1) supportability (the extent to which the opinion is supported by underlying medical

evidence and explanations), (2) the consistency of the opinion with other medical and

non-medical sources, (3) the relationship with the claimant (including the length, frequency,

purpose and extent of the relationship, and whether it was an examining relationship), (4) any

specialization, and (5) any other relevant factors.[36]  The most important factors are supportability

and consistency, and the ALJ is required to explain how she evaluated those two factors.[37]  The

ALJ may, but is not required to, explain how she considered the remaining factors.[38]  An ALJ is

required to articulate how she considered the other factors only if she finds "two or more medical

opinions or prior administrative medical findings about the same issue are both equally

well-supported . . . and consistent with the record . . . but are not exactly the same."[39]

Here, the ALJ found the state agency psychological consultants' prior administrative

findings persuasive, but he found nearly all the medical opinions of Ms. D.'s treating providers

and a neurological examiner unpersuasive.[40]  Ms. D. contends the ALJ's evaluation of the

---

[35] 20 C.F.R. § 404.1520c(a).

[36] *Id.* § 404.1520c(b), (c)(1)–(5).

[37] *Id.* § 404.1520c(b)(2).

[38] *Id.*

[39] *Id.* § 404.1520c(b)(3).

[40] (*See* Tr. 32–36.)  As described below, the ALJ found only one medical opinion from a treating source persuasive: Dr. Jay Nichols' January 2021 opinion assessing mild limitations.  (*See id.* at 35, 1553.)

opinions of her treating providers and the neurological examiner was "patently unreasonable."[41] She argues these opinions were "plainly consistent with and supported by the record" and "should have been found at least as persuasive as the administrative findings."[42]  Ms. D. contends that if the medical opinions and prior administrative findings were found to be equally persuasive, the ALJ would have been required to consider the other factors to "break the tie," and these factors would have favored the treating and examining sources.[43]

As explained below, because the ALJ applied the proper legal framework to the medical opinions of Dr. Baily, Dr. Kaplan, Ms. French, Dr. Mitchell, and Dr. Nichols, and his findings are supported by substantial evidence, Ms. D. has not demonstrated error in the ALJ's evaluation of these opinions.

### 1. *Dr. Rebecca Baily*

Ms. D. underwent a neuropsychological examination with Dr. Rebecca Baily in March 2018.[44]  The ALJ discussed the results of this examination in detail in his decision, noting Dr. Baily made "multiple significant findings including pressured and slurred speech, difficulty staying on topic, [and] tangential thought processes" and described Ms. D. as "appearing at times confused and rambling."[45]  Dr. Baily also conducted objective testing which revealed a borderline performance IQ and "profoundly impaired memory and cognitive flexibility."[46]  The

---

[41] (Opening Br. 13, Doc. No. 22.)

[42] (*Id.* (emphasis omitted).)

[43] (*Id.* at 19.)

[44] (*See* Tr. 509–17.)

[45] (*Id.* at 30; *see also id.* at 32–33.)

[46] (*Id.* at 30 (citing *id.* at 513, 515).)

ALJ also considered Dr. Baily's opinion that it was "unlikely" Ms. D. would be able to return to work "until the treatable causes of her cognitive difficulty [were] addressed."[47]

The ALJ concluded Dr. Baily's findings were supported by her examination.[48]  But the ALJ observed that "[d]espite these significant findings, Dr. Baily noted that the claimant's test results might not reflect only neurological issues.  Rather, the claimant's level of benzodiazepine use . . . could 'make someone look like they have dementia when they do not.'"[49]  The ALJ noted other providers expressed similar concerns, and Ms. D.'s medications were subsequently significantly adjusted or discontinued.[50]  The ALJ found that after the medication adjustment, from November 2018 forward, "records showed significant clinical improvement, including improved stuttering and later normal speech[;] improved energy, concentration, and focus[;] intact sleep; and improved mental status findings."[51]  The ALJ also found records from the same period showed "functional improvement including reading books, binge watching TV series, selling items online, studying for her driver's test[] and passing multiple online practice exams, planning to move out from her sister's home, and planning a road trip to visit family in Oregon."[52]  The ALJ concluded Dr. Baily's March 2018 opinion was "not consistent with the

---

[47] (Id. at 32 (quoting id. at 516).)

[48] (Id.)

[49] (Id. at 30 (quoting id. at 515); see also id. at 32–33.)

[50] (Id. at 30, 33.)

[51] (Id. at 33 (citing id. at 875, 892, 898, 900, 941, 1409, 1413, 1417–18, 1430, 1434, 1438); see also id. at 30 (summarizing records showing improvements by November 2018 following discontinuation or reduction of medications).)

[52] (Id. at 33 (citing id. at 897, 881, 1413, 1417, 1429).)

significant evidence obtained after her examination" and was "not persuasive in describing the claimant's functioning during the entire period at issue."[53]

The ALJ applied the proper legal standards in assessing Dr. Baily's opinion, including explaining his findings regarding supportability and consistency as required under the governing regulations.  The ALJ's findings are supported by the medical records cited and discussed in detail in his decision.  Specifically, the ALJ identified numerous records showing clinical and functional improvements after November 2018 following the adjustment in Ms. D.'s medications.[54]  This evidence is far more than a "mere scintilla"[55] and constitutes substantial evidence supporting the ALJ's conclusion that Dr. Baily's March 2018 findings did not reflect Ms. D.'s functioning after November 2018.

Ms. D. points to evidence in the record indicating she continued to experience difficulty with concentration, attention, memory, and other symptoms even after the changes to her medications.[56]  But the existence of some contrary evidence in the record does not demonstrate the ALJ erred.  Where, as here, substantial evidence supports the ALJ's findings, the court will not reweigh the evidence or substitute its judgment for that of the ALJ.[57]

Ms. D. also contends the ALJ mischaracterized the evidence regarding her activities of daily living after the medication adjustment.[58]  Specifically, Ms. D. notes she testified to

---

[53] (*Id.*)

[54] (*See id.* at 30, 33.)

[55] *Biestek*, 139 S. Ct. at 1154.

[56] (*See* Opening Br. 15, 17, Doc. No. 22.)

[57] *See Langley*, 373 F.3d at 1118.

[58] (*See* Opening Br. 16, Doc. No. 22.)

difficulty with reading and with following TV shows, and she claims she did not take the driver's license test because of confusion while trying to learn the information.[59] But the ALJ cited clinic notes as the basis for his findings regarding Ms. D.'s functional improvements, and his description of her activities accurately reflects the cited records, which document Ms. D.'s self-reports to providers.[60] Thus, the ALJ did not mischaracterize the evidence, and his findings are supported by Ms. D.'s self-reported activities documented in the medical record. The fact that Ms. D. offered some contrary testimony does not demonstrate error. This argument is merely another invitation to reweigh the evidence.

For these reasons, Ms. D. has demonstrated no error in the ALJ's evaluation of Dr. Baily's medical opinions.

### 2. Dr. Viktoria Kaplan

Dr. Viktoria Kaplan was Ms. D.'s treating neurologist during the relevant time period.[61] The ALJ considered numerous medical opinions from Dr. Kaplan, including physician statements from 2018, 2019, and 2021; questionnaires from 2020; and a 2021 letter.[62] The ALJ noted Dr. Kaplan had "consistently supported the claimant's disability" based on cognitive

---

[59] (*See id.* (citing Tr. 73, 941).)

[60] (*See* Tr. 33 (citing *id.* at 897 (June 2019 clinic note stating Ms. D. was "able now to focus well enough to read a book" and enjoyed binge watching TV series); *id.* at 1429 (October 2020 clinic note stating Ms. D. had passed multiple online practice driver's license tests).) Notably, the only evidence Ms. D. cites to support her assertion that she did not take the driver's license test is a clinic note from August 2019 stating she had "just gotten so confused in trying to learn the information that she [hadn't] stuck with it." (*Id.* at 941.) But this was more than a year before the clinic notes cited by the ALJ in which Ms. D. reported passing multiple online practice tests. (*See id.* at 1429.)

[61] (*See* Opening Br. 8, Doc. No. 22.)

[62] (*See* Tr. 34; *id.* at 284–85, 287–89, 591–97, 687–88, 787–802, 1370–71 (physician statements); *id.* at 950–53 (questionnaires); *id.* at 1440 (letter).)

deficits and assessed extreme functional limitations in all areas.[63]  The ALJ found these assessments were "somewhat supported by the claimant's 2018 PET scan establishing frontotemporal dementia" as well as Dr. Baily's March 2018 examination.[64]  However, the ALJ found Dr. Kaplan's assessment of functional limitations internally inconsistent, noting she assessed extreme limitations on one 2020 questionnaire but only moderate limitations on the same form two days later.[65]  The ALJ also noted the record contained no treatment notes from Dr. Kaplan after October 2019, which he found undermined the supportability of the 2020 questionnaires and the 2021 letter.[66]  Further, the ALJ found Dr. Kaplan's assessments were "not consistent with the significant functional improvement reflected in other providers' records after November 2018"—citing the same evidence of clinical and functional improvements described above.[67]  Accordingly, the ALJ found Dr. Kaplan's opinions unpersuasive.[68]

Ms. D. has demonstrated no error in the ALJ's assessment of Dr. Kaplan's opinions.  The ALJ applied the proper legal standards and explained his consideration of supportability and consistency as required.  His findings are supported by substantial evidence cited in the decision, including the same evidence of improvements discussed above with respect to Dr. Baily's opinions.

---

[63] (Tr. 34.)

[64] (*Id.*)

[65] (*Id.* (citing *id.* at 950–53).)

[66] (*Id.*)

[67] (*Id.*)

[68] (*Id.*)

Ms. D. argues the ALJ failed to address the degenerative nature of her condition.[69]  Ms. D. points out that Dr. Kaplan noted repeatedly that there was no treatment for frontotemporal dementia and her condition was expected to worsen.[70]  But these statements are not medical opinions regarding Ms. D.'s functional limitations during the relevant time period.[71]  And they do not undermine the ALJ's evaluation of the supportability and consistency of Dr. Kaplan's opinions.  Ms. D. offers no other arguments specific to Dr. Kaplan, but merely relies on the same arguments rejected in the analysis of Dr. Baily's opinions above.  Accordingly, Ms. D. has not demonstrated the ALJ erred in his evaluation of Dr. Kaplan's opinions.

### 3.  Lisa French, LCSW

Ms. D.'s counselor, Lisa French, LCSW, completed a physician statement related to Ms. D.'s mental health conditions in August 2018.[72]  Ms. French checked boxes indicating Ms. D. had intact attention, mildly impaired concentration, and moderately impaired memory, and she opined that Ms. D. was unable to work and could only perform basic activities of daily living.[73]  The ALJ found this assessment was "partially supported by Ms. French's records from the same date which noted the claimant was fidgety, restless, had articulation difficulties including stuttering that worsened with anxiety, an anxious and constricted affect, but logical and goal

---

[69] (Opening Br. 18, Doc. No. 22.)

[70] (*Id.* (citing Tr. 284, 591, 788).)

[71] *See* 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain enumerated work-related abilities).

[72] (Tr. 594–96.)

[73] (*Id.* at 594–95.)

directed thought processes, grossly intact attention, and fair insight and judgment."[74]  But the ALJ noted this form was completed during the process of reducing Ms. D.'s medications, and subsequent records showed improvement.[75]  Specifically, the ALJ noted just three months later, in November 2018, Ms. D. told Ms. French "[y]ou would not believe how much better I feel" after her medications were reduced.[76]  Additionally, the ALJ cited Ms. French's subsequent records indicating Ms. D. was much clearer, more lucid, and able to focus enough to read a book and watch TV.[77]  The ALJ also cited a 2021 record from Ms. French indicating she had not seen Ms. D. since August 2019 partly due to insurance issues and partly because Ms. D. was feeling good by the end of 2019.[78]  Finally, the ALJ noted other records showed functional improvement from November 2018, citing the same records discussed above with respect to Dr. Baily's opinion.[79]  Based on this evidence, the ALJ found Ms. French's opinion not persuasive.[80]

Ms. D. has demonstrated no error in the ALJ's assessment of Ms. French's opinion.  The ALJ applied the proper legal standards and explained his consideration of supportability and consistency as required.  His findings are supported by substantial evidence cited in the decision, including numerous records from Ms. French and other providers showing functional improvement beginning in November 2018 after Ms. D.'s medications were reduced.  Although

---

[74] (*Id.* at 34 (citing *id.* at 871).)

[75] (*Id.* at 34–35.)

[76] (*Id.* at 35 (quoting *id.* at 874).)

[77] (*Id.* (citing *id.* at 897).)

[78] (*Id.* (citing *id.* at 1421).)

[79] (*See id.*)

[80] (*Id.*)

Ms. D. points to some records showing continued symptoms after the reduction in medication,[81] this is merely an invitation to reweigh the evidence.  The ALJ did not err in his evaluation of Ms. French's opinion.

### 4.  Dr. Josh Mitchell

Dr. Josh Mitchell was a treating psychiatrist during the relevant time period.[82]  Dr. Mitchell completed physician statements in September 2018, assessing Ms. D. with extreme limitations in functioning.[83]  Dr. Mitchell explained Ms. D.'s frontotemporal dementia caused deficits in memory and attention which made work impossible.[84]  In March 2019, Dr. Mitchell completed another physician statement, noting some improvement in motor functioning and speech, but ongoing moderate memory issues, ongoing depression, and limited functional abilities.[85]

The ALJ noted Dr. Mitchell's September 2018 assessments were completed during the process of reducing Ms. D.'s medications, and he found they "[did] not represent the functional improvement noted in the records from November 2018 onwards."[86]  The ALJ found Dr. Mitchell's March 2019 assessment was inconsistent with records from another treating psychiatrist, Dr. Jay Nichols, noting "significant improvement in depressive symptoms"

---

[81] (*See* Opening Br. 15, 17, Doc. No. 22.)

[82] (*See id.* at 10.)

[83] (*See* Tr. 762–68, 800–02.)

[84] (*Id.* at 763.)

[85] (*Id.* at 248–49.)

[86] (*Id.* at 35.)

following a reduction in medication.[87]  The ALJ also found the March 2019 assessment inconsistent with the improvement documented in other records—citing Ms. French's June 2019 records noting Ms. D. was able to focus enough to read a book, enjoyed binge-watching TV, and was planning to study for a driver's license examination.[88]  The ALJ concluded Dr. Mitchell's assessments "at best provide snapshots of the claimant's functioning at the time they were made, but do not capture the ongoing functional improvement resulting from the change in the claimant's medications over the entire period."[89]  Accordingly, the ALJ concluded Dr. Mitchell's opinions were not persuasive.[90]

Ms. D. has demonstrated no error in the ALJ's evaluation of Dr. Mitchell's opinions. The ALJ applied the proper legal framework, and his finding that Mr. Mitchell's opinions were inconsistent with other medical records showing improvement is supported by substantial evidence cited in the decision.  Although, as discussed above, Ms. D. identifies some contrary evidence in the record,[91] the court will not reweigh the evidence where substantial evidence supports the ALJ's findings.  The ALJ did not err in his evaluation of Dr. Mitchell's opinion.

  *5.  Dr. Jay Nichols*

Dr. Jay Nichols was a treating psychiatrist during the relevant time period.[92]  Dr. Nichols completed a physician statement in January 2021, assessing Ms. D. with intact memory and mild

---

[87] (*Id.* (citing *id.* at 1436).)

[88] (*Id.* (citing *id.* at 897).)

[89] (*Id.*)

[90] (*Id.*)

[91] (*See* Opening Br. 15, 17, Doc. No. 22.)

[92] (*See id.* at 10–11.)

limitations in attention and concentration, and recommending work that did not require multitasking.[93]   The ALJ found this assessment was "generally supported by Dr. Nichols' records for the same date," including Ms. D.'s self-reported improved focus and concentration while taking Adderall, her self-reported problems with maintaining focus while multi-tasking, and mental status testing performed by Dr. Nichols.[94]   The ALJ concluded this evidence "supported Dr. Nichols' opinion of mild limitations and work not involving multi-tasking," and he found this opinion persuasive.[95]

Dr. Nichols also provided a May 2021 letter stating that Ms. D. reported "significant problems with depressed mood which affects her motivation to complete tasks and would make it difficult to attend work consistently," "significant problems with frequent anxiety including worry which can cause significant problems with distraction which would make it quite difficult to consistently stay on task when trying to engage in any work task," "significant problems with short term memory related to her history of frontotemporal dementia which makes it difficult to maintain attention and concentration on one task as she gets overly distracted," and "significant problems related to frontotemporal dementia of difficulties with comprehending instructions and new tasks such as learning tasks on a computer for a job."[96]   Dr. Nichols opined: "All of these symptoms would prevent this individual from working 8 hours a day, 5 days a week, on a

---

[93] (*See* Tr. 1379–80, 1405–06 (duplicate record).)

[94] (*Id.* at 35 (citing *id.* at 1409).)   Dr. Nichols' testing showed Ms. D. was "able to recall 3 out of 3 words after a five-minute delay, had normal speech, and was able to complete a serial 7 series, but made some errors in calculation."   (*See id.* (citing *id.* at 1409).)

[95] (*Id.* at 35–36.)

[96] (*Id.* at 1553.)

consistent and reliable basis without frequent interruptions, rest breaks, and absences due to these symptoms."[97]  Dr. Nichols also stated Ms. D. had "received only marginal benefit from treatment including pharmacotherapy and psychotherapy since starting to work with her in August 2019," and her memory and cognitive problems would likely continue to worsen over time.[98]

In assessing Dr. Nichols' May 2021 opinion, the ALJ found it unsupported by Dr. Nichols' own examination findings from January 2021 and noted the record did not include any follow-up mental status testing with Dr. Nichols.[99]  The ALJ also observed that Dr. Nichols' records from October 2020 showed Ms. D. reported selling items online, studying for a driver's test, and successfully completing several online practice tests.[100]  The ALJ further noted Dr. Nichols' mental status findings at that time showed Ms. D. had "intact recent and remote memory, normal speech, good mood and congruent affect, logical and goal directed thought process, intact associations, grossly intact attention/concentration, fair insight/judgment, and language within normal limits."[101]  Finally, the ALJ found Dr. Nichols' May 2021 opinion "inconsistent with records in March 2021 showing the claimant planning to move out and get an

---

[97] (*Id.*)

[98] (*Id.*)

[99] (*Id.* at 36.)

[100] (*Id.* (citing *id.* at 1429).)

[101] (*Id.* (citing *id.* at 1430).)

apartment with her son, as well as setting up a road trip with her nephew to visit family in Oregon."[102]  Accordingly, the ALJ found Dr. Nichols' May 2021 opinion unpersuasive.[103]

Ms. D. has demonstrated no error in the ALJ's evaluation of Dr. Nichols' opinions.  The ALJ applied the proper legal framework, and his findings regarding supportability and consistency are supported by substantial evidence, including the numerous records cited and discussed in detail in the decision.  As discussed above, Ms. D.'s identification of some contrary evidence does not demonstrate error and merely invites improper reweighing of the evidence.  The ALJ did not err in his evaluation of Dr. Nichols' opinions.

     6.   *The ALJ Was Not Required to Discuss Factors Other than Supportability and Consistency*

As discussed above, the ALJ found nearly all the medical opinions of treating and examining sources to be inconsistent with records showing Ms. D.'s clinical and functional improvement beginning in November 2018.[104]  The ALJ also found some of these opinions unsupported by the source's own records and rationale.[105]  The ALJ's findings are supported by substantial evidence, for the reasons discussed above.  By contrast, the ALJ reasonably found the state agency consultants' prior administrative medical findings to be generally well-supported and consistent with the medical evidence.[106]  Ms. D. does not challenge the ALJ's assessment of the prior administrative medical findings.  Because the ALJ did not find the treating and

---

[102] (*Id.* (citing *id.* at 1413).)

[103] (*Id.*)

[104] (*Id.* at 32–36.)  The only exception is Dr. Nichols' January 2021 assessment of mild limitations, which the ALJ found persuasive.  (*See id.* at 36.)

[105] (*See id.* at 32–36.)

[106] (*See id.* at 33–34.)

examining sources' opinions equally well-supported and consistent as the state agency consultants' findings, the ALJ was not required to discuss factors other than consistency and supportability to "break the tie," as Ms. D. contends.[107]

In sum, the ALJ applied the proper legal standards in evaluating all the medical opinions, and his findings are supported by substantial evidence. Therefore, the ALJ did not err in his evaluation of the medical opinion evidence.

### B. Subjective Symptom Evaluation

Ms. D. next contends the ALJ's evaluation of her self-described limitations is undermined by (1) his failure to properly evaluate and credit the medical opinion evidence, and (2) his failure to consider her exemplary work history.[108]

Ms. D. has not demonstrated the ALJ erred in his evaluation of her subjective symptoms. Under the governing agency regulations, an ALJ must "consider all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."[109]  Social Security Ruling 16-3 instructs ALJs to evaluate subjective symptom evidence following a two-step process.

---

[107] *See* 20 C.F.R. § 404.1520c(b)(3) ("When [the ALJ] find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [the ALJ] considered the other most persuasive factors."); (*see also* Opening Br. 19, Doc. No. 22).

[108] (Opening Br. 20, Doc. No. 22.)  Ms. D. describes the ALJ's evaluation of her self-described limitations as a "credibility" determination, but she acknowledges the term "credibility" is no longer used in agency policy to describe subjective symptom evaluation.  (*See id.* at 20 n.14); *see also* Soc. Sec. Ruling No. 16-3p, 2016 SSR LEXIS 4, at *1.  Where it is apparent Ms. D. merely uses this term to refer to the ALJ's assessment of whether her self-reported symptoms and limitations are consistent with other evidence in the record, her arguments are analyzed accordingly.

[109] 20 C.F.R. § 404.1529(a).

First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment (s) that could reasonably be expected to produce an individual's symptoms, such as pain."[110]   Second, the ALJ evaluates "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."[111]   In doing so, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."[112]

The ALJ properly applied this two-step process in evaluating Ms. D.'s subjective symptoms.[113]   The ALJ found Ms. D.'s "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[114]   The ALJ found that, during the relevant period, Ms. D. "engaged in a number of activities that are not consistent with the severity of the reported symptoms and undercut a finding of total disability"—listing numerous specific examples with citations to the record.[115]   The ALJ also found the medical evidence was "not

---

[110] Soc. Sec. Ruling No. 16-3p, 2016 SSR LEXIS 4, at *3.

[111] *Id.* at *3–4.

[112] *Id.* at *10.

[113] (*See* Tr. 28–32.)

[114] (*Id.* at 29.)

[115] (*Id.*)

entirely consistent with the severity of [Ms. D.'s] allegations."[116]  The ALJ's decision includes

an extensive discussion of the medical evidence, including records showing "a profound

improvement in clinical findings as well as [Ms. D.'s] functioning" beginning in November

2018—after adjustments to her medications.[117]

Ms. D. does not expressly challenge these findings; instead, she argues the ALJ's

evaluation was deficient for two reasons.  First, she contends the ALJ's failure to properly

evaluate the medical opinion evidence undermined his determination, "since the issues of

weighing of opinion evidence and evaluation of whether a claimant's self-described limitations

are consistent with the record are inextricably intertwined."[118]  However, for the reasons

explained above, the ALJ did not err in his evaluation of the medical opinion evidence.

Therefore, this argument is without merit.

Second, Ms. D. argues the ALJ should have considered her exemplary work history in

evaluating her self-described limitations.[119]  A claimant's prior work record is among the "other

evidence" to be considered in evaluating a claimant's subjective symptoms.[120]  However, the

Tenth Circuit has held an ALJ is not required to discuss every factor in evaluating a claimant's

subjective symptoms.[121]  The ALJ provided detailed reasons, supported by substantial evidence,

---

[116] (*Id.*)

[117] (*Id.* at 30.)

[118] (Opening Br. 20, Doc. No. 22.)

[119] (*Id.* at 20–21.)

[120] 20 C.F.R. § 404.1529(c)(3).

[121] *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Our precedent 'does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility.'" (quoting *Qualls v. Apfel*,

for his assessment of Ms. D.'s symptoms.[122]  Ms. D. does not challenge the ALJ's stated reasons

or the evidence supporting them.  Under these circumstances, the ALJ did not err in failing to

specifically discuss her work history in evaluating her subjective symptoms.[123]

      For these reasons, Ms. D. has demonstrated no error in the ALJ's evaluation of the

subjective symptom evidence.

## CONCLUSION

      The Commissioner's decision is AFFIRMED.

      DATED this 8th day of August, 2023.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

206 F.3d 1368, 1372 (10th Cir. 2000)); *see also Lorie D.B. v. Kijakazi*, No. 21-CV-407-CDL, 2023 U.S. Dist. LEXIS 56016, at \*19 (N.D. Okla. Mar. 31, 2023) (unpublished) ("The ALJ is . . . not required to discuss every subjective symptom analysis factor.").

[122] (*See* Tr. 29–32.)

[123] Ms. D. cites a district court case finding it was "error for the ALJ not to at least consider Plaintiff's work history in his analysis of Plaintiff's credibility."  *Wegner v. Astrue*, No. 08-cv-00703-WYD, 2009 U.S. Dist. LEXIS 94927, at \*31 (D. Colo. Sep. 28, 2009) (unpublished). This authority is not controlling, particularly in light of Tenth Circuit precedent holding an ALJ is *not* required to discuss every factor.  *See Poppa*, 569 F.3d at 1171.  And it does not support Ms. D.'s argument that the ALJ erred in failing to discuss Ms. D.'s work history under the circumstances presented here, where the ALJ provided detailed reasons supported by substantial evidence for his evaluation of subjective symptoms, which Ms. D. does not challenge.